## SKEEN et al. v. WARREN IRRIGATION COMPANY et al.

No. 2464. Decided May 8, 1913 (132 Pac. 1162).

1. CORPORATIONS—RIGHT OF ACTION BY MINORITY STOCKHOLDERS. Minority stockholders of an irrigation corporation could not restrain the corporation from diverting from a stream for irrigation purposes water which was running to waste without appropriating it as prescribed by statute, even assuming that the state could do so. (Page 606.)

2. CORPORATIONS—RIGHT OF ACTION BY MINORITY STOCKHOLDERS. A stockholder in a corporation has a remedy in equity against the

directors to prevent acts amounting to a violation of the charter or to prevent any misapplication of the capital or profits which might lessen the value of the shares, if the acts would amount to a breach of trust or duty.  (Page 606.)

3. CORPORATIONS—DIRECTORS—FRAUD—CORPORATE POLICY.  The purchase and installation of a pumping plant for lifting water from a river for irrigation purposes was not violative of the charter of an irrigation corporation or of the laws of the state, nor was it an *ultra vires* act, but on the contrary it was purely a question of policy for the determination of the board of directors with which a court of equity would not interfere at the suit of minority stockholders.  (Page 607.)

4. CORPORATIONS—DIRECTORS—FRAUD—CORPORATE POLICY.  In the absence of usurpation, fraud, or gross negligence, courts of equity will not interfere at the suit of a dissatisfied minority to overrule and control the discretion of corporate directors on questions of management, policy, or business, but will allow the majority to rule, leaving the minority to redress their grievances through ordinary corporate methods; the distinction with respect to interference by the courts being between acts in excess of the powers of the directors and in breach of their trust, and acts within their powers merely involving an exercise of the discretion committed to them.  (Page 608.)

APPEAL from District Court, Second District; *Hon. N. J. Harris,* Judge.

Action by Joseph Skeen and another against the Warren Irrigation Company and others.

Judgment dismissing the complaint.  Plaintiffs appeal.

AFFIRMED.

*Skeen Brothers* and *Wilkins* for appellant.

*Halverson* and *Pratt* for respondents.

FRICK, J.

The plaintiffs brought this action in equity, as minority stockholders, to obtain an injunction against the corporation, and especially against the individual defendants, who constitute a majority of the board of directors of said corpora-

tion. In view that the findings of fact fairly reflect the issues presented by the pleadings, none of which is assailed on this appeal, we shall do no more than set forth the material portions of the findings in condensed form, which are to the effect:

That the defendant irrigation company was incorporated pursuant to the laws of this state for the purpose of acquiring and operating a canal system to be used for the distribution of water for irrigation; that the authorized capital stock of said corporation was $40,000 divided into shares of fifteen dollars each; that the officers of said corporation consist of a board of five directors from whose number a president, vice president, a secretary, and a treasurer are chosen; that a majority of such board of directors constitute a quorum, which, when duly assembled, is authorized to exercise all of the corporate functions; that, for the purpose of paying debts and to effectuate the objects of said corporation, the funds are raised or provided by levying assessments on the outstanding capital stock aforesaid; that the plaintiff Joseph Skeen is the president and the defendants Folkman, East, Muirbrook, and another not a party here with said Skeen constitute the board of directors and the corps of officers of said corporation; that the assets of said corporation consist of a contract to purchase a certain irrigation canal system upon which there remains unpaid upwards of $18,000 of the purchase price, and the only means the corporation has of raising money to pay said obligation is by levying assessments as aforesaid and rentals received from water rights in said canal system; that the plaintiffs are owners of lands which can be and are irrigated by water taken from said canal system, and said lands cannot be irrigated from any other source; that said canal system is in need of repair, and a large flume, which is a part thereof, must be repaired at large expense, and unless such repairs are made a large portion of said canal system will become useless; that the water in said canal system comes from the Weber River, from Four-Mile Creek, and from Mill Creek, and flows into the intake of said canal by gravity at a point four miles

west of Ogden City; that there arises and flows in Weber River below the intake of said canal a quantity of water which, with the water from other sources that passes the head-gate of said canal during the low-water season, amounts to fifteen second feet at a point six miles below the intake of said canal; that no application of any kind to appropriate said fifteen second feet of water in said Weber River or any part thereof has been made by either the individual defend-ants, as officers or agents of the defendant irrigation com-pany, or otherwise or by said company, and that no applica-tion to change the place where the water flowing in said canal is diverted into the same has been made by said irrigation company nor by any one in its behalf; that the individual defendants constituting a majority of the board of directors of the defendant irrigation company, while acting as its board of directors and in pursuance of a resolution adopted by said board, borrowed from a certain bank the sum of $1,200 upon the credit of said company and on its behalf purchased with said money from the Salt Lake Hardware Company a pumping plant for the purpose of installing the same on the banks of the Weber river at a point about six miles below the intake of said canal, and that when this action was commenced said pumping plant had been deliver-ed to the purchasers and was ready for installation; that said pumping plant is intended to be used and can be used for the purpose of pumping said fifteen second feet of water from Weber River, and which water is not being used for any other purpose; that in order to raise funds with which to pay said $1,200 and an additional sum necessary to com-pletely install and equip said pumping plant not to exceed $3,000, making $4,200 in all, the board of directors of the defendant irrigation company intends to and will levy as-sessments upon the capital stock of said company, one of which assessments has already been levied and in large part paid and the proceeds thereof applied in payment of a large portion of the indebtedness aforesaid; that, before the con-tract to purchase said pumping plant was entered into, the plaintiffs herein informed said hardware company that said

defendant irrigation company had not appropriated the water which was intended to be pumped by said plant, and that said plaintiffs also from time to time protested and objected to the purchase and installment of said pumping plant by the majority of said board. The court further found that the hardware company had consulted reputable attorneys who advised it that a contract for the purchase and installment of said pumping plant could legally be entered into by said board of directors. It will be observed that neither fraud nor bad faith on the part of the board of directors is alleged or found.

The court, upon the foregoing facts, found as a conclusion of law that the plaintiffs were not entitled to prevail, and that the complaint should be dismissed. Judgment was entered accordingly, from which this appeal is prosecuted. The only errors assigned are that the court erred in making the conclusion of law aforesaid, and also erred in entering judgment dismissing the complaint.

Appellants contend that the important question is "whether or not the public waters of the State of Utah can be appropriated in any manner other than that specifically prescribed by the statutes." We are of the opinion that the proposition stated by counsel is not involved in this controversy. If it be assumed that the state could interfere with the proposed use of the water, yet plaintiffs cannot, for that reason, insist upon championing the rights of the state, whatever they may be, in this action. Upon the other hand, it is not at all likely that the state will interfere with any one who is or is attempting to apply water which is running to waste to a lawful use or purpose, even though it could do so. But it is time enough to consider that question when the state attempts to interfere.

It is, however, further contended that the appellants, as stockholders, have the right to invoke the aid of a court of equity to arrest or to prevent the unlawful or wrongful appropriation of corporate funds by the board of directors. Appellants rely upon the doctrine laid down by the Supreme Court of the United States in Dodge

v. Woolsey, 18 How. 331, 15 L. Ed. 401.  The law is there
stated in the following words:

"A stockholder in a corporation has a remedy in chancery against
the directors to prevent them from doing acts which would amount
to a violation of the charter or to prevent any misapplication of
their capital or profits which might lessen the value of the shares,
if the acts intended to be done amount to what is called in law
a breach of trust or duty."

There is no doubt of the soundness of the foregoing doctrine
nor of the right of a stockholder to invoke the aid of a court
of equity in case the officers of a private corporation offend
against it.

In what way is the board of directors of the defendant
irrigation company doing any act or acts which are either
unlawful or which "amount to a violation of the charter,"
or which "amount to a breach of trust or duty"?  The defend-
ant corporation was organized for the express purpose of ac-
quiring and operating canals, ditches, and appliances through
and by the means of which water was to be applied to
a beneficial purpose, namely, for the purpose of irrigat-
ing arid lands and in that way to reclaim them and
make them fruitful.  The purchase and installation of a
pumping plant to lift water from the river bed of Weber
River so as to use it for the purpose of irrigation is certainly
not violative of either the charter of the company or the laws
of this state.  It is not an *ultra vires* act but is one that is not
only authorized by the charter but is contemplated therein.
The only question involved here, therefore, is one of policy
and not of power or legality.  It may be that the purchase
and installation of a pumping plant is not the best business
policy that might have been pursued.  Whether it is or is
not cannot be determined by a court of equity in a proceed-
ing of this character.  That is a matter for the board of di-
rectors, and when they cannot agree the majority of the
board must assume the responsibility of deciding upon a
business policy.  For aught that is made to appear from
the record before us, the pumping plant may be a profitable
business venture; but whether it is or is not is entirely im-
material.  What the board of directors did was lawful and

directly within the charter power of the corporation, and where such is the case, and in the absence of fraud or a "breach of trust or duty," courts cannot interfere with the acts of the board of directors.

The true distinction with respect of when courts of equity may and may not interfere with the directors in the conduct of corporate affairs at the instance of stock-    **4** holders is clearly stated in 10 Cyc. 969, in the following words:

"The true distinction is between acts in excess of the powers of the directors and in breach of their trust and acts which are within their powers and which merely involve an exercise of the discretion committed to them. The rule here is that, in the absence of usurpation, of fraud, or of gross negligence, courts of equity will not interfere at the suit of a dissatisfied minority, merely to overrule and control the discretion of the directors on questions of corporate management, policy, or business, but will allow the majority to rule, and will leave the dissatisfied minority to redress their grievances through ordinary corporate methods."

From the findings of fact it is manifest that the case at bar is not one where interference by the courts is permissible. The district court was clearly right, therefore, in dismissing the complaint.

The judgment is affirmed, with costs to respondents.

McCARTY, C. J., and STRAUP, J., concur.